## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAREED AHMED and AHLIA AHMED, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> -vs.- <br><br> UNISON AGREEMENT CORP., REAL ESTATE EQUITY EXCHANGE INC., ODIN NEW HORIZON REAL ESTATE FUND, LP, and UNISON INVESTMENT MANAGEMENT, LLC, <br> Defendants. | CASE NO. 1:23-cv-6003 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## I.      INTRODUCTION

1.      Plaintiffs Fareed Ahmed and Ahlia Ahmed ("Plaintiffs" or "the Ahmeds") bring this action individually and on behalf of all others similarly situated against Defendants Unison Agreement Corp., Real Estate Equity Exchange Inc., Odin New Horizon Real Estate Fund LP, and Unison Investment Management, LLC (collectively "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

2.      This is a putative class action lawsuit brought against Defendants based on their fraudulent, misleading, unfair, and deceptive business practices. Defendants systematically misrepresented services on their Websites as a "co-investment" by which a

homeowner may "unlock the value" of their home to induce unsophisticated homeowners such as Plaintiffs who, relying on Defendants' representations, believe that Defendants will merely share in a portion of the change in value of their home.

3.      In reality, the agreement transfers the majority of the value of these homes to Defendants.

4.      Defendants obscure the fact that this agreement is a complex, risky, and speculative option contract in which the homeowner bets against the value of their own home increasing—a deal which the homeowner is essentially guaranteed to lose.

## II.      PARTIES

5.      Plaintiffs Fareed Ahmed and Ahlia Ahmed are citizens of New York, with an address at 121 Dartmouth Loop, Staten Island, New York 10306.

6.      Fareed and Ahlia are husband and wife and were and are at all relevant times the owners in fee simple of 121 Dartmouth Loop, Staten Island, New York 10306 (hereinafter, "the Property").

7.      At all times Defendant Unison Agreement Corp. ("Unison") was and remains a Delaware corporation with its principal place of business at 650 California Street, Suite 1800, San Francisco, California 94108.

8.      Upon information and belief, at all relevant times Defendant Real Estate Equity Exchange Inc. ("Equity Exchange") is a Delaware corporation with its principal place of business at 650 California Street, Suite 1800, San Francisco, California 94108.

9.      Upon information and belief Equity Exchange is the corporate parent of Unison.

10.    Upon information and belief, at all relevant times Defendant Odin New Horizon Real Estate Fund LP ("Odin") is a Delaware limited partnership with its principal place of business at 650 California Street, Suite 1800, San Francisco, California 94108. It is the holding company managed by Unison.

11.    Upon information and belief, at all relevant times Defendant Unison Investment Management, LLC ("Unison Investment Management") (also known as Odin Investment Management) is a Delaware corporation with its principal place of business at 650 California Street, Suite 1800, San Francisco California 94108. It is the investment company which markets the home equity Unison acquires to institutional investors and, accordingly, is an alter ego of Unison and joined in a common enterprise with Unison and the other Defendants.

12.    Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

### III.    JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendants.

14.     Furthermore, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the federal question presented, and ancillary or supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over the parties because Plaintiffs reside in  New York and submits to the jurisdiction of the Court, and because Defendants have, at all times relevant hereto, systematically and continually conducted business in New York within this District, and/or intentionally availed themselves of the benefits and privileges of the New York consumer market through the promotion, marketing, and sale of their products and services to residents within this District and throughout New York. Additionally, Plaintiffs entered into agreements with Defendants while residing in this state.

16.     Under 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in Richmond County, New York, which is located within the Eastern District of New York. Also, Plaintiffs reside in this District and entered agreements with Defendants in this District. Moreover, Defendants systematically conduct business in this District and throughout the State of New York and they targeted advertisements toward and entered agreements with Plaintiffs and Class Members in this District and this State.

## IV.     GENENERAL FACTUAL ALLEGATIONS

### A.  The History of the Reverse Mortgage Lending Market

17.     Unison was founded in 2004, and is a national company headquartered in San Francisco, California.

18.    At all relevant times Defendants and their agents/affiliates and alter egos created and have maintained a Website using the domain name www.unison.com.

19.    The content of the Website is set to inform a potential participant in the Unison program with what appears to be factual statements relating to the Unison "co-investment" model and is designed so that an uninformed person reviewing the Website would believe the published statements to be true.

20.    Unison is grossly irresponsible in the publication of the content on the Website. The content is not only misleading, but patently false and set forth with reckless disregard for the truth or falsity thereof.

21.    Upon information and belief, Defendants are using the Website as a springboard to contact individuals in markets across the country, including the State of New York, to induce them to do business with Unison.

22.    Through its Website, Unison touts itself as an entity that offers an alternative to home loans with so-called "home co-investing."

23.    Unison claims to provide a program in which it provides homeowners with an upfront cash payment in exchange for a share of the change in value when the home is sold.

24.    Specifically, on the Website, Unison claims  "[w]e convert up to 17.5% of your home's value to cash, so you can live the life you really want. Unlike a loan, there is no added debt, monthly payments, or interest. We share in a portion of your home's change in value when you decide to sell." That statement is materially false.

25.     In reality, to the detriment of its customers, Unison's "share" upon sale is a majority of the home's entire value, not just "a portion of [the] home's change in value."

26.     Unison falsely claims that they are not giving the homeowner a loan, but rather purchasing a percentage of the change in value of their home. That statement is materially false.

27.     Unison also falsely claims that the homeowners have the ability to buyout at any time without penalty. That statement is materially false.

28.     In reality, upon an attempted early termination, Unison guarantees itself at least the repayment of the upfront payment, i.e., the "cash" it paid to the homeowner in exchange for its purported share in the home's changed value, which in reality is a majority of the home's entire value. Because repayment upon early termination is guaranteed to Unison, the upfront cash payment functions as a loan.

29.     Unison describes itself as a "co-investor" in the homeowner's property for a share in the change of the value of that property. However, this program is actually both a high-interest loan and an acquisition of a majority of the homeowner's equity.

30.     The pricing of Unison's acquisition of its ownership interest in a homeowner's property is based upon the property's purported value as determined in Unison's sole discretion and upon an appraisal requisitioned by Unison. Unison has a financial incentive to lowball the appraisal, and in Plaintiff's case, did just that by using an appraisal that was at least 2.5% undervalued. That undervalued appraisal had a substantial effect upon Plaintiffs and similarly situated class members.

31.    By falsely claiming to offer certain advantages over conventional borrowing, Unison preys on the vulnerabilities of low-income borrowers.

32.    Unison typically targets homeowners trying to get out of debt, to whom the avoidance of monthly principal and interest payments is particularly attractive.

33.    Unison also targets the elderly and the unsophisticated homeowner.

34.    Unison also targeted homeowners, like Plaintiffs, who relied on government mortgage relief programs during the COVID-19 pandemic with notices about offers to help with a refinance of their home.

35.    To induce these unsophisticated borrowers to agree, Unison fails to disclose that the participants in Unison programs relinquish substantial equity in their home's value and intentionally understates and/or ignores the home's true value in its appraisal.

36.    While presenting their model as a "co-investment" with the homeowner, Unison does not share in expenses for maintaining or improving the property. Homeowners, including Plaintiffs, must continue to pay all of the expenses associated with the property, but if they sell or seek to buy out Unison's interest, they will get no credit for those payments and will lose a majority of the equity they had built up to Defendants.

37.    Based on Defendants' deceptive conduct and unfulfilled promises, Plaintiffs bring claims on behalf of themselves and all similarly situated persons for fraud and fraudulent misrepresentation, violation of Section 10b–5 of the Securities Exchange Act, violation of the Truth in Lending Act, unjust enrichment, violations of New York's General Business Law §§ 349 and 350 and Article 12-D of the New York Banking Law, rescission, an action to quiet title, slander of title, and an action for declaratory judgment. On behalf

of themselves and all similarly situated persons, Plaintiffs seek damages in excess of $1 Million, recission, statutory and punitive damages, and declaratory and injunctive relief.

**B. Allegations Relating to All Counts**

38.    The Ahmeds jointly own the Property in which they reside in a tenancy by the entirety. The Property is their home and place of residence.

39.    The Ahmeds are not educated investors, or sophisticated in real estate investment or mortgage lending.

40.    The Property is the Ahmeds' only real estate holding and is the major portion of their net worth.

41.    In March of 2021, the Ahmeds were in need of money to pay for medical bills for Ahlia's cancer treatment. In need of money, Fareed saw an online advertisement for a loan.

42.    Plaintiffs recalled the loan advertisement stating there would be no pay for thirty years and then payment back with some interest.

43.    On June 1, 2021, Fareed received an email from Unison, which said "We've recently been notified that you may have fallen behind on your mortgage payments and we are here to help." The email further stated that "Unison is your partner in home ownership. We have many resources that can help you get back on track. . . ." The email invited Fareed to reach out to Unison and schedule a call.

44.    While responding to the advertisement, Plaintiffs found Unison's Website.

45.    Plaintiffs were never informed that the home's value could easily exceed the amount paid in interest through a traditional home equity loan and that it would be

prohibitively expensive to buy out Unison's interest a short time after entering into the agreement.

46. Plaintiffs were never informed that the appraisal was biased in favor of Defendants and that the valuation was grossly undervalued and false.

47. Unison took advantage of Plaintiffs' financial situation by offering Plaintiffs a minimal payment to effectively acquire a majority of the ownership interest in Plaintiffs' home.

48. Unison's deception and its failure to provide accurate information about what it misleadingly referred to as a "co-investment" caused and continues to cause Plaintiffs multiple forms of significant harm.

49. After reviewing the information on the Website, including, but not limited to, the statement "We share in a portion of your home's change in value when you decide to sell," Plaintiffs made contact with Unison. Throughout the period leading up to their signing the agreement, Fareed was in contact with one Unison representative—Lily Kwong, a Program Specialist for Unison. Ms. Kwong told him that the payment to him is a "better value."

50. Ms. Kwong also stated to Plaintiffs that Unison would share in a portion of their home's change in value when they decide to sell. She told Plaintiffs not to worry about Unison's percentage, since they would only need to pay it later. Instead of answering Plaintiffs' questions, Ms. Kwong directed them to the agreement they would be asked to sign.

51.     Plaintiffs believed Ms. Kwong, and the information that she and Unison provided to them. Plaintiffs requested an application and other material to commence the process whereby Plaintiffs would receive funds from Unison. Plaintiffs were told to gather documents and arrange for an appraisal to be done.

52.     Subsequently, on or about April 14, 2021, Plaintiffs received an offer package from Unison. The offer package included the Unison HomeOwner Agreement, a copy of the Home Inspection report, and a copy of Unison's Appraisal. Unison ultimately sent a subpar and below market appraisal. The appraisal valued the Property at $648,375, a value that was too low. That lowball valuation also included a 2.5% "Risk Adjustment" downwardly valuing the property from $665,000, essentially guaranteeing Unison gains on the "investment" at the Ahmed's expense.

53.     Unison created a pressured environment that made it impossible for an uneducated homeowner to make an informed decision. The message accompanying the offer package notified Plaintiffs that it "expired in 10 days." Furthermore, the message said "[i]f you have any questions regarding the terms of the investment, please contact your Program Manager." But as previously alleged, Ms. Kwong did not answer Plaintiffs' questions but instead directed him to the agreement. Furthermore, the Offer Package listed Sarah Crooks as the Program Specialist, although Ms. Kwong was the assigned Program Specialist and was the Unison employee communicating with Plaintiffs.

54.     The low appraisal allowed Unison to underpay Plaintiffs because the cash paid to Unison's customer is calculated as a percentage of that appraised value. Ultimately,

Unison offered a "Co-investment Amount" of $93,100 and deducted fees, resulting in a cash payment of $84,556.90.

55.    Around April 16, 2021 the Ahmeds were presented with several agreements and were told to sign them. Those agreements included a "Unison Homeowner Option Agreement," a "Unison Homeowner Covenant Agreement," and a "Unison Homeowner Mortgage and Security Agreement," totaling approximately 65 single-spaced pages of legalese and using terminology that is indecipherable to average laymen, such as the Ahmeds.

56.    A Unison representative came to the Ahmeds' home with the agreements. The representative Unison sent was a third-party notary, and was not equipped to answer any questions. Moreover, Unison did not provide the closing documents to the Ahmeds in advance of the appointment, while requiring that any questions be sent to the Program Specialist "prior to your signing appointment."

57.    Until they received a letter from Chase Bank regarding the lien on the home obtained by Unison, Plaintiffs were unaware that a lien would be put on their home.

58.    Plaintiffs did not realize that the 70% equity amount in the contract would result in such a substantial payment to Unison. Although Plaintiffs haven't needed to consider selling or refinancing for financial reasons yet, they believe the agreement would make it much more difficult to do so.

59.    The Ahmeds are not alone in being induced by Unison into unwittingly signing an unfavorable agreement stripping their home equity for a cash loan and entering a complex and speculative option contract effectively shorting the value of their own home.

The fraudulent misrepresentations Unison employed to induce Plaintiffs to sign are replicated with many desperate, low-income, elderly, and unsophisticated borrowers in New York and across the country. Indeed, this deceptive course of conduct constitutes Unison's entire business strategy.

60.    After deceptively acquiring a majority of the equity of each homeowner's home, Defendants through Defendant Unison Investment Management sells this interest by advertising on its website, www.unisonIM.com, to institutional investors that it provides "geographically diversified portfolios which provide structurally levered home price exposure with unlimited upside and limited downside." Unison Investment Management touts that it "has created an asset that aims to meet the needs of, and create value for, institutional investors." That "new" asset is the home equity of desperate homeowners like the Ahmeds.

61.    Upon information and belief, Defendant Equity Exchange, as the corporate parent of Unison, controlled and directed all of the actions of Unison and its employees and representatives alleged herein.

62.    Upon information and belief, Defendant Odin is the holding company managed by Unison. These companies are so intertwined that the acts of Unison and its employees and representatives are also the acts of Odin and vice versa, as they are part of a common enterprise.

63.    All conditions precedent have been met, and this action is being commenced prior to the expiration of the applicable statutes of limitation.

## V. CLASS ALLEGATIONS

64.    As alleged throughout this Complaint, the Class' claims all derive directly from a single course of conduct by Defendants. Defendants have engaged in uniform and standardized conduct toward the Class—their marketing of agreements, the course of fraudulent and deceptive conduct inducing homeowners to sign the agreement, and the terms, conditions, and effect of the agreements between Defendants and each homeowner, which deprive each homeowner of a majority of the equity in their home. This case is about the responsibility of Defendants, at law and in equity, for their knowledge and conduct in deceiving its customers.  This conduct did not meaningfully differentiate among individual Class members in its degree of care or candor, its actions or inactions, or in the content of its statements or omissions. The objective facts on these subjects are the same for all Class members.

65.    Plaintiffs sue on their own behalf and on behalf of a Class for damages and injunctive relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

> **The New York Class:**  all persons in New York who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, entered an agreement with Unison.

66.    Excluded from the class are the following individuals: officers and directors of Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has

a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

67.    Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

68.    <u>Numerosity.</u> The members of the class are so numerous that a joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe the class numbers in the tens of thousands, if not more.

69.    <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the class members because, among other things, Plaintiffs sustained similar injuries to that of class members as a result of Defendants' uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendants.

70.    <u>Adequacy</u>.  Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs' interests do not conflict with the interests of the class members and Plaintiffs have retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

71.    <u>Commonality.</u> Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual members of the class, including the following:

a.    Whether Defendants' conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of New York and the United States;

b.    Whether Defendants were unjustly enriched as a result of its conduct;

c.    Whether Class Members have been injured by Defendants' conduct;

      d.      Whether any or all applicable limitations periods are tolled by Defendants' acts;

      e.      Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

      f.      The extent of class-wide injury and the measure of damages for those injuries.

72.    <u>Ascertainability</u>.  Class members can easily be identified by an examination and analysis of the business records maintained by Defendants, among other records within Defendants' possession, custody, or control.

73.    <u>Predominance</u>. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the class.  The class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' conduct.

74.    <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable.  Furthermore, as damages suffered by class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

75.     Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

76.     This class action is also properly brought and should be maintained as a class action because Plaintiffs seek injunctive relief and declaratory relief on behalf of the class members on grounds generally applicable to the proposed class.

77.     Further, the following issues are also appropriately resolved on a class-wide basis under Fed. R. Civ. P. 23(c)(4):

a.     Whether Defendants' conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of New York and the United States;

b.     Whether Defendants were unjustly enriched as a result of its conduct;

c.     Whether Class Members have been injured by Defendants' conduct;

d.     Whether any or all applicable limitations periods are tolled by Defendants' acts;

e.     Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

f.     The extent of class-wide injury and the measure of damages for those injuries.

78.     Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the proposed class, making final declaratory or injunctive relief appropriate.

**FIRST CAUSE OF ACTION**
**Common Law Fraud**
**(On behalf of Plaintiffs and the New York Class)**

79.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

80.    Plaintiffs seek to recover for Defendants' common law fraud on behalf of themselves and the New York Class.

81.    Defendants participated in a massive fraud by identifying and targeting Plaintiffs and members of the New York Class to induce them to transfer a substantial ownership interest from Plaintiffs and class members to Defendants. Defendants furthered the fraud by providing false and misleading information on the Website that was intended to create the impression that the subject transaction was fair and in Plaintiffs' best interests.

82.    Defendants acted with the intent that Plaintiffs and class members rely on their false representations and with full knowledge that Plaintiffs and class members would rely on its false representations, in order to induce Plaintiffs and class members to agree to transfer substantial ownership interests to Defendants.

83.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that Defendants failed to disclose such facts such as the undervaluation of the Property, the actual interest conveyed to Defendants being the entire value of the Property and not just an interest in the change in value, the mischaracterization of the transaction as an investment and "not a loan" when it really functions as a loan, and the nature of the transaction as a complex, speculative, and risky option contract in which the homeowner loses more the more their home increases in value, rather than a "co-investment" in which both parties win, as Defendants advertise.

84.    Such material misrepresentations and/or omissions were done knowingly or recklessly, with reckless indifference to the truth, and for the purpose and effect of

concealing the true nature of the deal and the extent of Defendants' self-dealing and fraud; and with the intent to induce Plaintiffs and class members to rely upon them and transfer a majority ownership interest in their homes to Defendants.

85.    Plaintiffs and class members acted in direct reliance on the representations and omissions made by Defendants.

86.    Plaintiffs and class members justifiably relied upon the false and misleading representations and omissions made by Defendants. At the time of said misrepresentations and/or omissions, Plaintiffs and class members were ignorant of their falsity and believed them to be true. Had Plaintiffs and class members known the truth regarding the actual circumstances of the subject transactions as well as Defendants' fraud, they would not have transferred an ownership interest to Defendants, and would have taken the appropriate steps to protect their investment.

87.    Furthermore, Plaintiffs' and class members' reliance on Defendants' reputation was reasonable. Defendants tout their reputation as reputable with the highest standards on the Website. Moreover, Plaintiffs and class members had no reason to suspect that Defendants' representations were false.

88.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and class members have suffered damages in that, in reliance on Defendants' false and misleading statements, they have transferred a substantial ownership interest in their property to Defendants. Plaintiffs and class members have been damaged in an amount to be proven at trial but believed to be in excess of $1 Million.

## SECOND CAUSE OF ACTION
### Common Law Fraud
### (On Behalf of Plaintiffs and the New York Class)

89.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

90.     Defendants presented Plaintiffs and class members with a below-market and inadequate appraisal of their property. The below-market and inadequate appraisal was the basis of the Unison Investment Payment.

91.     Because the appraisal was below market and inadequate, the Unison Investment Payment was too low and the calculations of the amounts to be received by Defendants upon a sale of the property or a Special Termination will artificially inflate the amount Defendants are to receive.

92.     As a direct and proximate cause of Defendants' material omissions and material misrepresentations in and regarding the appraisal, Plaintiffs and class members have suffered damages in an amount to be proven at trial but believed to be in excess of $1 Million.

### THIRD CAUSE OF ACTION
**Fraudulent and/or Negligent Misrepresentation**
**(On Behalf of Plaintiffs and the New York Class)**

93.     Plaintiffs incorporates the previous allegations as though fully set forth herein.

94.     Defendants knowingly and intentionally concealed material information from Plaintiffs and class members, which is required by federal statutes and regulations to be disclosed to Plaintiffs and class members both before and at the closing.

95.     Perhaps the strongest evidence of Defendants' fraudulent misrepresentation is that Defendants misrepresented material information to Plaintiffs, namely the true nature of the transaction, with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

96.     In furtherance of Defendants' fraudulent scheme, Unison's Website is replete with myriad misrepresentations and misleading information that fails to disclose the fact

that Plaintiffs and class members assigned a significant ownership interest in their property to Defendants.

97.    In addition, Defendants failed to disclose the fact that the appraisals that were used to value Plaintiffs' and class members' residences were undervalued and upon information and belief based on subjective information.

98.    Under the circumstances, the material omissions and misrepresentations of Defendants were malicious.

99.    At the time Defendants made the misrepresentations, Defendants knew or should have known that the misrepresentations were false, or Defendants made the misrepresentations without knowledge of their truth or veracity.

100.    Plaintiffs and class members intended to rely, and reasonably, justifiably, and detrimentally relied upon the false representations made by Defendants by transferring a substantial ownership interest in their property to Defendants. As a proximate result thereof, they have and will continue to suffer damages.

## FOURTH CAUSE OF ACTION
### Violations of New York General Business Law § 349
### (On Behalf of Plaintiffs and the New York Class)

101.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

102.    Plaintiffs bring this claim under N.Y. GEN. BUS. LAW § 349 on their own behalf and on behalf of each member of the New York Class.

103.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this State." NY GBL § 349. GBL § 349(g) provides that § 349 "shall apply to all deceptive

acts or practices declared to be unlawful whether or not subject to any other law of this state."

104.    Defendants, by their acts and conduct alleged and described herein, have committed a violation of GBL § 349(a).

105.    Defendant's marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

106.    By engineering and implementing fraudulent practices, Defendant engaged in, and continues to engage in, deceptive acts and practices in violation of GBL § 349.

107.    Defendant has violated GBL § 349 statute by, *inter alia*:

a.    Engaging in a marketing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.    Omitting material information in order to induce customers to transfer a large share of their home equity to Defendants;

c.    Using an inaccurate, below-market appraisal of property to minimize the Unison Investment Payment;

d.    All other acts and misrepresentations alleged above.

108.    The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

109.    As a direct and proximate result of Defendant's unlawful and deceptive marketing and billing practices, Plaintiffs and the New York Class have suffered injury and monetary damages in an amount to be determined at the trial of this action, but believed to be in excess of $1 Million.

## FIFTH CAUSE OF ACTION
### Violations of New York General Business Law § 350
### (On Behalf of Plaintiffs and the New York Class)

110.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

111.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

112.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

113.    Defendants violated GBL § 350 because they engaged in false advertising in the conduct of a business, trade, or commerce in this state.

114.    Defendants' acts were consumer oriented and triggered reliance by consumers.

115.    Defendants' acts and/or practices are "deceptive or misleading in a material way" and include but are not limited to, the false statements on the Website that Unison would only share a portion of the change in value in the property but in actuality acquired a majority interest in the entire value of the property, and the description of the agreement

as a "co-investment," when Defendants are guaranteed to gain money on the transaction while Plaintiffs and class members are almost certain to lose.

116.   Defendants' acts and/or practices caused actual harm to Plaintiffs and class members.

117.   Plaintiffs and class members have been injured as a result of Defendants' acts and/or practices, including violations of GBL § 350.

118.   As a direct and proximate result of the foregoing, Plaintiffs and class members have suffered damages in an amount to be proven at trial, but believed to be in excess of $1 Million.

<u>**SIXTH CAUSE OF ACTION**</u>
**Violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 of the Securities Exchange Commission, 17 CFR § 240.10b–5**
**(On Behalf of Plaintiffs and the New York Class)**

119.   Plaintiffs incorporate the previous allegations as though fully set forth herein.

120.   Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful

> [t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

121.   Rule 10b–5 provides the following actions are among those prohibited by Section 10(b):

> To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

made, in the light of the circumstances under which they were
made, not misleading . . . .

17 C.F.R. § 240.10b–5.

122.    The option contract on the home equity of Plaintiffs and class members is a
"security" within the meaning of Section 10(b) and Rule 10b–5, the purpose of the
transaction for Plaintiffs and class members being the expectation of economic benefit or
gain and financial profit, hence Defendants' promotion of the transaction on its Website
and elsewhere as a "co-investment."

123.    In connection with the purchase and sale of this option that was the subject
of the transaction alleged in this Complaint, Defendants, acting with scienter, made false
material representations and/or omitted to disclose material information, including the
following:

    a.  the undervaluation of the property in the appraisal based on subjective
       criteria;

    b.  the actual interest conveyed to Defendants being the entire value of the
       property and not just an interest in the change in value;

    c.  the true nature of the transaction as a complex, speculative, and risky option
       contract in which the homeowner is guaranteed to lose more the more their
       home increases in value, rather than a "co-investment" in which both parties
       win, as Defendants advertise;

    d.  that the agreement is a "better deal" than other financing and investment
       opportunities; and

e.  all other omissions and misrepresentations as alleged herein.

124.  Plaintiffs and class members, acting in reliance on Defendants' representations and omissions, experienced economic loss as a direct and proximate result of entering into these transactions, including the loss of a large share of the equity in their primary assets—their homes.

125.  These statements and omissions are material to a reasonable investor, and without them, Plaintiffs and class members would not have entered the agreements at issue.

126.  Accordingly, Defendants' knowing misrepresentations and omissions caused Plaintiffs' and class members' losses to their own gain.

127.  As a direct and proximate result of the foregoing, Plaintiffs and class members have suffered damages in an amount to be proven at trial, but believed to be at least $1 Million.

128.  The conduct of Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiffs and class members are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

129.  Plaintiffs request the court award damages to be determined at trial but believed to be in excess of $1 Million plus the cost of this action, and such other relief as the court may deem proper.

## SEVENSTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs and the New York Class)

130.  Plaintiffs incorporate the previous allegations as though fully set forth herein.

131.   To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

132.   As set forth above, Plaintiffs and class members entered into various agreements with Defendants with the understanding that they would receive a cash payment from Defendants in exchange for a portion of any change in value in their property when the property is sold.

133.   Defendants have been unjustly enriched at the expense of Plaintiffs and and class members by actually acquiring a majority of the value and a majority of Plaintiffs' and class members' equity in their property.

134.   It would be unjust for Defendants to be able to retain the benefit of such enrichment to Plaintiffs' and class members' detriment.

135.   As a direct and proximate result of the foregoing, Plaintiffs and class members have suffered damages in an amount to be proven at trial, but believed to be in excess of $1 million.

## EIGHTH CAUSE OF ACTION
### Violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq., and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1
### (On Behalf of Plaintiffs and the New York Class)

136.   Plaintiffs incorporate the previous allegations as though fully set forth herein.

137.   Unison violated the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA") by allowing Plaintiffs and class members to effectively enter into loan agreements which were wholly unsuitable for them.

138.    The transaction that is the subject matter of this Complaint, although not termed a loan, was and is a consumer-credit transaction within the meaning of TILA.

139.    Defendants violated TILA by failing to provide Plaintiffs and class members with accurate material disclosures required under TILA and not taking into account the intent of the statute, which was to fully inform home buyers of the pros and cons of a credit transaction in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar products with other lenders. It also requires Defendants to offer other loan products that might be more advantageous for Plaintiffs under the same qualifying matrix.

140.    Defendants effectively extended or offered credit, making them creditors under 15 U.S.C. § 1602(f) and Regulation Z, 12 C.F.R. § 226.2(a)(17).

141.    Plaintiffs and class members executed a Security Agreement and a Mortgage which are consumer credit transactions within the meaning of 15 U.S.C. 1601 and Regulation Z, 12 C.F.R. § 226.

142.    That transaction is governed by the Truth in Lending Act, 15 U.S.C. § 1601 and Regulation Z, 12 C.F.R. § 226.

143.    Defendants failed to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 226.17(a).

144.    Defendants failed to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z, 12 C.F.R. § 226.17(a).

145.    Defendants failed to include as finance charges certain charged imposed by Defendants payable by Plaintiffs and class members incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z, § 226.4, thus improperly disclosing finance charges in violation of 15 U.S.C. § 1638(a) and Regulation Z, 12 C.F.R. § 226.18(d).

146.    Defendants improperly represented a loan as an investment in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b).

147.    As a further direct and proximate result of Defendants' conduct, Plaintiffs and class members lost substantial equity in their homes.

148.    As a direct and proximate result of Defendants' conduct, Plaintiffs and class members are permanently burdened by the fraudulent and unlawful agreement made by Defendants.

149.    By reason of the foregoing violations of TILA and Regulation Z, Defendants are liable to Plaintiffs and class members for actual damages to be established at trial along with attorney's fees and costs in accordance with 15 U.S.C. § 1640.

### NINTH CAUSE OF ACTION
**Violations of New York Banking Law Article 12-D**
**(On Behalf of Plaintiffs and the New York Class)**

150.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

151.    Defendants violated New York Banking Law Article 12-D, by acting as a mortgage banker without a proper license.

152.    Defendants acted as a mortgage banker by effectively lending $84,556.90 to Plaintiffs and taking a mortgage and security interest in the Property.

153.    Similarly, Defendants acted as a mortgage banker by effectively lending money to class members and taking a mortgage and security interest in their property.

154.    Defendants have made a mortgage loan secured by the Mortgage and Security Agreement without a proper license.

155.    Based on the aforementioned violations, Plaintiffs and class members are entitled to recoup all payments made or required to be paid under the terms of the loan transaction and are entitled to statutory damages, in the amount of payments made or required to be made and damages, with the amount of actual damages to be established at trial along with attorney's fees and costs.

### TENTH CAUSE OF ACTION
**Usury**
**(On Behalf of Plaintiffs and the New York Class)**

156.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

157.    New York law provides "that the maximum rate of interest upon a 'loan or forbearance of any money, goods, or things' shall be 16% per annum unless otherwise provided by law,' and '[n]o person or corporation shall, directly or indirectly, charge take or receive any money, goods, or things in action as interest' at a rate exceeding 16%." *Adar Bays, LLC v. Genesys ID Inc.*, 179 N.E. 3d 612, 616, 157 N.Y.3d 320, 326 (N.Y. 2021) (quoting N.Y. Gen. Oblig. Law § 5-501[1], [2]).

158.    Furthermore, "[a]ny loan that reserves or takes any greater interest 'than is prescribed in section 5-501'—the civil usury prohibition (16%)—'shall be void' (unless

the lender is a bank or loan association, which will be held to have forfeited all interest on the loan)." *Id.* at 616, 157 N.Y.3d at 326 (quoting N.Y. Gen. Oblig. Law § 5-521(1)).

159.   The transaction at issue in the agreements between Plaintiffs and class members and Defendants is a loan of money at a rate of interest to be proven at trial but that substantially exceeds the 16% annual rate permitted by N.Y. Gen. Oblig. Law § 5-501.

160.   The terms of the Unison Option Contract and other agreements requiring a percentage payment to Defendants upon sale of a property has "intrinsic value that is bargained for" in exchange for the cash payments given to Plaintiffs and class members just like the "floating-price conversion options" at issue in *Adar Bays, LLC*. Like those option contracts, Defendants' option here "should be treated as a component of interest." *Adar Bays, LLC*, 179 N.E.3d at 624, 37 N.Y.3d at 337.

161.   Plaintiffs and class members have been and continue to be injured by these violations of New York usury laws.

162.   Plaintiffs respectfully request declaratory and injunctive relief, damages, attorney's fees and costs, and all relief the Court finds just and proper on behalf of themselves and class members.

## ELEVENTH CAUSE OF ACTION
### Slander of Title
### (On Behalf of Plaintiffs and the New York Class)

163.   Plaintiffs incorporate the previous allegations as though fully set forth herein.

164.   Defendants disparaged Plaintiffs' and class members' exclusive valid rights to title through the preparing, posting, publishing, and recording of the documents

previously described herein, including, but not limited to, the Mortgage and Security Agreement, and other documents evidencing ownership of the property by a party who does not possess that right.

165.    Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's and class members' legal title to their property. By posting, publishing, and recording the documents, Defendants' disparagement of Plaintiffs' and class members' legal title was made to the world at large.

166.    The claims of Defendants constitute a cloud on Plaintiffs' and class members' title to their properties.

167.    Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations, and interests with regard to the Property.

168.    As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' and class members titles to their properties have been disparaged and slandered, and there is a cloud on Plaintiffs' and class members' title, and Plaintiffs and class members have suffered, and continue to suffer, damages in an amount to be proven at trial but believed to be in excess of $1 Million.

169.    The conduct of Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiffs and class members are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

170.    Plaintiffs request the court award damages to be determined at trial but believed to be in excess of $1 Million plus the cost of this action, and such other relief as the court may deem proper.

## TWELFTH CAUSE OF ACTION
### Rescission
### (On Behalf of Plaintiffs and the New York Class)

171.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

172.    An actual controversy now exists between Plaintiffs, who contend they and class members have the right to rescind the transaction involved in this Complaint, and based on information and belief, Defendants deny that right.

173.    Money damages will not be sufficient to cure the stain on Plaintiffs' title or class members' titles and to make them whole. Rescinding the agreements will actually be effective in putting each party back into roughly the same position they were in before the agreements were signed.

174.    Plaintiffs have brought this action promptly after learning the truth about the transaction and the agreements they signed.

175.    Therefore, Plaintiffs and class members who choose to do so are entitled to rescind the Unison Homeowner Option Agreement, Unison Homeowner Covenant Agreement, and Unison Homeowner Mortgage and Security Agreement.

## FOURTEENTH CAUSE OF ACTION
### Quiet Title
### (On Behalf of Plaintiffs)

176.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

177.    Defendants claim an interest and estate in the Property adverse to Plaintiffs in that Defendants assert they are the owner of over 70% of the Property.

178.    The claims of Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien, or interest in or to the Property, or any part of the Property.

179.    Defendants claim some estate, right, title, lien or interest in or to the Property adverse to Plaintiffs' title, and these claims constitute a cloud on Plaintiffs' title to the Property.

180.    Plaintiffs, therefore, allege upon information and belief, that Defendants do not hold a perfected and secured claim in the Property, and are estopped and precluded from asserting a claim against the Property.

181.    Plaintiffs therefore request a judicial determination of the rights, obligations, and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

182.    Plaintiffs request that all adverse claims to the Property be determined by a decree of the Court.

183.    Plaintiffs request the decree declare and adjudge that the Ahmeds are entitled to the exclusive possession of the property.

184.    Plaintiffs request the decree declare and adjudge that the Ahmeds own in fee simple, and are entitled to the quiet and peaceful possession of, the Property.

185.    Plaintiffs requests the decree declare and adjudge that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the Property.

186.    Plaintiffs request the decree permanently enjoin Defendants, and all persons claiming under them, from asserting any adverse claim to Plaintiffs' title to the property; and Plaintiffs request the court award Plaintiffs' costs of this action, and such other relief as the Court may deem proper.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)    Issue an order certifying the Class defined above, appointing the Plaintiffs as Class Representatives, and designating Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel;

(b)    Find that Defendants, joined in a common enterprise, have committed the violations of law alleged herein;

(c)    Determine that Defendants have been unjustly enriched as a result of their wrongful conduct, and enter an appropriate order awarding restitution and monetary damages;

(d)    Awarding Plaintiffs and members of the New York Class actual damages, compensatory damages, punitive damages, statutory damages and penalties, in amount to be determined, including pre-judgment and post-judgment interest;

(e)    Enter an order granting all appropriate relief including declaratory and injunctive relief on behalf of the New York Class under the applicable state and federal laws;

(f)    Declare the agreements entered into between Plaintiffs and Defendants and class members and Defendants void as usurious and violative of New York law;

(g)    Render an award of compensatory damages, the exact amount of which is to be determined at trial;

(h)    Render an award of punitive damages;

(i)    Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(j)    Grant all such other relief as the Court deems appropriate.

Dated: August 8, 2023.                    Respectfully submitted,

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**

By: */s/ Randi Kassan, Esq.*
Randi Kassan, Esq.
100 Garden City Plaza
Garden City, NY 11530
Telephone: (212) 594-5300
rkassan@milberg.com

Scott C. Harris (*to seek admission pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
sharris@milberg.com

*Attorneys for Plaintiff and the Proposed Class*